CHICAGO—FIRST DISTRICT—MARCH, 1913.   553

Zenco Elec. Supply Co. v. South Shore Elec. Co., 177 Ill. App. 553.

## Zenco Electrical Supply Company, Appellee, v. South Shore Electric Company et al., on appeal of H. M. Hooker Company, Appellant.

### Gen. No. 17,122.

1. MECHANICS' LIEN—*time for filing petition.* A subcontractor cannot contend that the date on which final payment was due him was that on which an order was given to the contractor to resume work or the contract would be canceled, and not the date on which the materials were furnished or thirty days thereafter, where there is no proof that the payment to such subcontractor was dependent on the completion of the contract, but it seems from the evidence that he furnished materials to the contractor for several contracts, that the accounts were not kept separate and that payment was due when the materials were furnished or thirty days thereafter.

2. SALES—*when payment due.* Prima facie the payment for goods sold and delivered to a contractor on orders to send them to a certain place becomes due on delivery.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in this court at the October term, 1910. Reversed with directions. Opinion filed March 4, 1913, Rehearing denied March 17, 1913.

E. C. MAPLEDORAM, for appellant.

JAMES HIBBEN, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Cook County, entered on July 15, 1910, by which it was decreed that unless the H. M. Hooker Company, the appellant, paid to the complainant, the Zenco Electrical Supply Company, the sum of $495.97, with interest thereon at the rate of five per cent. per annum from the date of the decree to the day of payment, with the taxed costs in the cause, certain premises in Chicago belonging to the said H. M. Hooker Com-

554 APPELLATE COURTS OF ILLINOIS.

Zenco Elec. Supply Co. v. South Shore Elec. Co., 177 Ill. App. 553.

pany should be sold to satisfy a lien to which the decree found the Zenco Electrical Supply Company was entitled by virtue of its furnishing as a subcontractor materials to a building on the said premises, under a contract with the South Shore Electric Company. The South Shore Electric Company had a contract with the H. M. Hooker Company to furnish all material and labor necessary to instal a conduit wiring system for the building, and it proceeded to purchase for delivery to the building from the Zenco Electrical Supply Company electrical conduit calls, covers, gang switch boxes and other electrical materials and supplies.

The South Shore Electric Company was on the 12th day of December, 1907, declared a bankrupt. The Zenco Electrical Supply Company filed its claim in that proceeding and was paid dividends amounting to $65.78 on said claim.

In this appeal there are several points urged as reasons why the decree should be reversed, but there is one which is, in our opinion, conclusive against the right of the complainant to the relief granted by the decree. This renders it unnecessary to consider the others.

The statute under which this suit is brought and which alone gives the right to the subcontractor for materials to a lien,—("An Act to revise the law in relation to Mechanics Liens, Approved May 18, 1903") provides (section 33) that the petition shall be filed or suit commenced to enforce the lien given to subcontractors "within four months after the time that the final payment is due the subcontractor * * * furnishing the material."

The contention of the appellee is that the final payment was not due the subcontractor until December 2, 1907, the date when the Hooker Company notified the contractor to resume work on its contract or it would be canceled. The master to whom the cause

was referred and the court below sustained this con-
tention; but it is a conclusion with which we are un-
able, on full consideration, to agree. The master dis-
poses of the question as follows:

"The contract of the Zenco Company was dependent
upon the contract of the South Shore Company and
the time when the four months would begin to run
would therefore commence on December 2, 1907. As
the bill in this case was filed on March 31, 1908, it was
within the statutory time."

We cannot find in the evidence in this cause any
proof that the time of payment or "credit" given
the South Shore Company by the Zenco Company
for the goods furnished depended on the completion of
the contract by the South Shore Company with the
Hooker Company, or had any relation to the payment
of the Hooker Company to the South Shore Com-
pany.

The appellee relies, it would appear, on the testi-
mony of Frantzen, its Secretary and Treasurer, and
of Mr. Spensley, the Secretary of the South Shore
Company, but we cannot find justification in either
for the conclusion reached by the master and the
court below.

Frantzen testifies that the Zenco Company had busi-
ness dealings with the South Shore Company for an
extended period, selling them goods; that in relation
to the sale of the goods in question which went to the
Hooker building, he had a conversation with Spens-
ley; that "the only thing was to send them over to
the job;" that "the material was ordered by Spens-
ley and his foreman;" that the bills introduced in evi-
dence "represent a series of orders and conversa-
tions; that they were telephone orders; that before
deliveries were made the orders were O. K.'d by
him." He says: "I am cognizant of everything that
goes out of our house in the way of goods. Mr. Spens-
ley made arrangements with me by 'phone that if any

telephone orders came there I would O. K. them and I O. K.'d the credit." And again: "When the South Shore wanted material for the Hooker job, Mr. Spensley was either at our office when he had the first conversation, or it was over the 'phone to establish the credit and the passing of whatever orders that would be given either that day or later for that contract, and I told him I would sell the goods to him and deliver them at the job." Then he says that Mr. Spensley told him that he would call him up or have his foreman do it, to give the specific items to send over, and that the order tickets were then filled out, O. K.'d by him (Frantzen) and the goods shipped. He further testifies that "after the delivery of the goods demands for payment were made by me of Mr. Spensley and he said they did not have the money." He further testified: "I went to Spensley and told him I wanted a check and he kept putting me off and said they did not have the money and then they dropped into bankruptcy." Again he says that when he went to Spensley for money he was expecting him, Spensley, to collect money from various other unfinished jobs and pay it over for the material furnished on the Hooker job.

Spensley, referring to electrical material purchased by the South Shore Company from the Zenco Company for various jobs, says he "never understood it as their having two or more separate accounts."

Nor do we see in Spensley's cross-examination, as it appears in the record (referred to in the appellee's argument as unabstracted) anything to show that the Zenco Company's rights against the South Shore Company as to time of payment depended on the contract of the latter corporation with the Hooker Company. He merely says: "I gave orders from time to time over the telephone and confirmed them by written orders afterwards for goods to be delivered to the Hooker building from the Zenco people."

The goods in question here, for the price or value of which this lien was decreed, were delivered at the Hooker building on the order of the South Shore Company on October 15, 16, 17 and 22, 1907. *Prima facie* the payment for goods sold and delivered as these were becomes due on delivery. So far as the record goes, that may have been the case with these goods, and the last payment have become due on October 22, 1907. There is nothing sufficient to overcome this *prima facie* presumption. It is true that Mr. Frantzen, as pointed out by appellee, spoke of Spensley having a conversation with him to "establish the *credit,* and that he (Frantzen)" O. K.'d the *credit,* but this might mean nothing more than that Frantzen's O. K. was necessary to the delivery of the goods without previous payment.

But assuming, as was very probable, that some time credit was expected and understood to exist, there is no evidence as to what it was, except evidence which tends strongly to show it could not have been more than 30 days—a very usual time for credit in the sale of merchandise. When, on December 10, 1907, the Zenco Company gave a formal notice to the H. M. Hooker Company and others for the purpose of establishing its lien, it selected November 22, 1907, as the date on which it said there was due to it the sum of four hundred and thirty-eight and 95/100 dollars on account of the goods which the South Shore Electric Company had employed it to furnish. November 22nd was the thirty-first day after the last delivery was made of the goods in question.

On a certified copy of a statement introduced in evidence, which statement was annexed to a claim of the Zenco Company against the South Shore Company in the bankruptcy proceedings of the latter company, and which included the goods involved in this litigation, there appears as a part of the "Bill head," —"TERMS: NET 30 DAYS." This is, perhaps,

not properly to be considered material or competent evidence on the issues in this case; but we note it for illustration of the hypothesis that a "credit" might well exist from the Zenco Company to the South Shore Company, without its being a credit which extended the due date of payment for any goods furnished on and before October 22, 1907, to a later time than that fixed by the notice—November 22, 1907.

This bill or petition was not brought until March 31, 1908, more than four months after November 22, 1907.

We feel compelled to reverse this decree and remand the cause to the Circuit Court with directions to dismiss the bill.·

*Reversed with directions.*